UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES,<br>Plaintiff<br><br>v.<br><br>12,744 SOLAR PANELS,<br>Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CASE NO. _____ |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, the United States of America, by and through its United States Attorney for the

Southern District of Texas and the undersigned Assistant United States Attorney, represents:

NATURE OF ACTION

1.      This is a civil forfeiture action *in rem* brought against 12,744 solar panels

(Defendant Solar Panels) under 19 U.S.C. § 1595a which provides in part, "[M]erchandise which

is introduced or attempted to be introduced into the United States contrary to law…shall be seized

and forfeited if it is stolen, smuggled, or clandestinely imported or introduced." 19 U.S.C.§

1595a(c)(1)(A). Defendant Solar Panels were clandestinely imported into the United States in that

they were falsely classified to conceal the true quality, nature, and value of the merchandise. Here,

the Defendant Solar Panels were classified as "Glass fiber, including glass wool, rovings, other"

originating in Mexico.

2.      The manner in which the Defendant Solar Panels were introduced into the

commerce of the United States by means of false classification and country of origin is in violation

1

of 18 U.S.C. § 541, Entry of Goods Falsely classified;[1] 18 U.S.C. § 542, Entry of Goods by means of False Statements;[2] and 18 U.S.C. § 545, Smuggling Goods into the United States with intent to Defraud the United States.[3]

JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.    Venue is proper in the Southern District of Texas under 28 U.S.C. §§ 1355, 1391 and 1395. The 12,744 solar panels were found and seized in Laredo, Texas, at BASI Logistics Group, Inc. located at 11918 Conly Rd., Laredo, Texas, pursuant to a seizure warrant executed on or about September 6, 2024.

DEFENDANT PROPERTY

5.    The Defendant is 12,744 solar panels.

6.    The importer and consignee of the Defendant Solar Panels is Ecochillers, Inc. with an address of 7600 Burnet Road in Austin, Texas.

DEFINITIONS

7.    The following non-exhaustive list of definitions applies to this Complaint:

---

1. 18 U.S.C. § 541 provides, in part, the following: "Whoever knowingly effects any entry of goods … upon a false classification as to quality or value, or by the payment of less than the amount of duty legally due, shall be fined under this title or imprisoned not more than two years, or both."

2. 18 U.S.C § 542 provides, in part, the following: "Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal … whether or not the United States shall or may be deprived of any lawful duties … shall be fined for each offense under this title or imprisoned not more than two years, or both."

3. 18 U.S.C. § 545 provides, in part, the following: "Whoever knowingly and willfully, with intent to defraud the United States…makes out or passes, or attempts to pass, through the custom-house any false, forged, or fraudulent invoice, or other document or paper, or whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law…shall be fined under this title or imprisoned not more than 20 years, or both."

a.    "Consignee" refers to the receiver, buyer, or owner of goods.

b.    "Country of origin" refers to the country where goods are manufactured.

c.    "Customs broker" or "broker" refers to the party legally authorized to conduct customs-related business on behalf of clients such as the manufacturers, importers, consignees, and shippers of foreign-made goods. The responsibilities of a customs broker include learning about clients' goods, facilitating shipment of the goods, and making sure all applicable "customs paperwork" or "entry documents" are accurate and complete. This includes classifying imported goods under classification guidelines found in the United States Harmonized Tariff Schedule, and calculating import duties, or "customs duties," owed by the importer of record or consignee.

d.    "Customs entry," or "entry," refers to a procedure in which goods arriving to a country can be legally processed in compliance with laws and regulations of the country. A customs entry is required for the goods to be released to the importer.

e.    "Importer," or "importer of record," refers to the party liable for the payment of duties/tariffs owed on imported goods/merchandise or acts as an authorized agent on behalf of the consignee. Importers and consignees can be the same entity.

f.    "Lading" is a term used to describe the action or process of loading cargo onto a ship or other vessel.

g.    "Manufacturer" refers to the entity who makes, creates, or produces goods

3

for sale.

h.       "Rate advance" refers to an enforcement action used by U.S. Customs and

Border Protection (CBP) to retroactively increase the amount of duty owed on

customs entries that have already entered U.S. commerce when CBP has

identified possible violations or errors on the entry. CBP has until 316 days after

the entry date to issue a rate advance.

i.       "Shipper," or "exporter", refers to the entity responsible for lading goods

being sent. The shipper ensures all shipping documents accompany the movement

of goods for customs clearance. Shipping documents include bills of lading,

commercial invoices, packing lists, and proper licenses for customs exceptions or

restrictions to prevent problems during customs clearance both at origin and

destination ports.

j.       "Shipping documents," "customs paperwork," "entry documents," or

"entry packet/package" are used synonymously when referring to documents related

to customs business.

k.       "Solar cell," or "photovoltaic cell" are used synonymously when referring

to a nonmechanical device that converts sunlight directly into electricity. For the

purposes of this affidavit, the use of "solar cells" or "photovoltaic cells" refers

specifically to the Crystalline Silicon Photovoltaic variety of solar cells.

l.       "Solar panels," or "solar modules", are used synonymously when referring

to an assembly of solar cells mounted in a framework for installation. A single solar

panel typically contains 60 to 72 solar cells.

<u>IMPORTATION OF MERCHANDISE INTO THE UNITED STATES</u>

8.      CBP is responsible for administering the Tariff Act of 1930, as amended, 19 § 1202-1683g (hereinafter "the Tariff Act"). Among other things, the Tariff Act empowers CBP to assess and collect duties, taxes, and fees on merchandise imported into the United States, and empowers HSI to investigate smuggling and fraud relating to the collection of revenue on imported goods.

9.      The Tariff Act, and the regulations promulgated thereunder, mandate certain procedures for the importation of goods into the United States. Pursuant to 19 U.S.C. § 1484, the importer of record, or his authorized agent, such as a Customs Broker ("broker"), must file "entry" documents with CBP that provide specific information relating to the imported goods. These documents, collectively referred to as the "entry package", include invoices, bills of lading, packing lists, and Customs Forms 3461 (Entry/Immediate Delivery) and 7501(Entry Summary).

10.     The Customs Modernization Act (Title VI of the North American Free Trade Agreement Implementation Act [P.L. 103-182, 107 Stat. 2057], effective December 8, 1993) places the responsibility on the importer for the accurate declaration of value, classification, and rate of duty for imported merchandise. Therefore, even when a customs broker is used to file entry documents, it is the sole responsibility of the importer of record to certify that the information provided to the customs broker is true and correct.

11.      Pursuant to 19 U.S.C. § 140la (b), CBP uses the statements from the entry package that identify a good's country of origin, and the total price paid (or payable) to determine the proper tariff rate and, thus, calculate CBP duties for the good's entry. CBP duties

are calculated based on the "transaction value" of the merchandise, which is the price paid (or payable) for the merchandise when sold for exportation to the United States, as reflected on the invoice.

CLASSIFICATION OF GOODS FOR DUTY ASSESSMENT

12.     The Harmonized Tariff Schedule (HTS) is a classification system used to identify goods being imported into the United States and to provide guidelines—which are assembled into a catalog of specific codes—for all goods in trade for duty, quota, and statistical purposes. The HTS provides the applicable tariff rates and statistical categories for all merchandise imported into the United States.

13.     HTS codes are, essentially, unique codes that inform CBP of the correct duty for any given imported good. CBP is the only entity authorized to interpret the HTS, issue legally binding rulings or advice on tariff classifications, administer customs laws, and collect all duties and penalties on behalf of the United States.

14.     Goods moving from any foreign country into the United States are "imported." Every importation of goods is an "entry" for which an "importer of record," using "reasonable care," must submit to CBP certain details related to the importation. 19 U.S.C § 1484(a); 19 C.F.R. § 14l.4(a). These details include "the declared value, classification and rate of duty applicable to the merchandise, and such other documentation or ... information as is necessary to enable the Customs Service to ... properly assess duties on the merchandise." 19 U.S.C § l484(a)(l)(B).

15.     Every importer of record making an entry must make and file a declaration under oath that states "that all other statements in the invoice or other documents filed with

the entry, or in the entry itself, are true and correct." 19 U.S.C § 1485(a)(3). In addition to preparing, filing, and ensuring the accuracy of entry documents, an importer of record is also legally responsible for paying duties and fees to CBP. *See* 19 C.F.R. § 141.l(b)(1).

16.    If an importer enters the incorrect HTS code, or a false description of the imported goods, the importer might not pay the correct duty.

**Upon information and belief, the United States of America alleges**:

16.    Beginning in May 2024, Special Agents with the Department of Homeland Security – Homeland Security Investigations began an undercover operation which targeted importers of SOLAREVER solar panels entering the United States from Mexico and misrepresented as having been manufactured in Mexico when the country of origin was China. The investigation began after multiple seizures of SOLAREVER solar panels attempting entry into the United States commerce through various ports of entry along the Texas border with Mexico.

17.    One such seizure of solar panels occurred in October 2023 in Laredo, Texas, following a Customs and Border Protection (CBP) inspection of a bonded warehouse. During the inspection, CBP officers identified six shipments of SOLAREVER solar panels which had been imported from Mexico. The entry documents for the solar panels claimed they were manufactured in Mexico when the country of origin was determined to be China.

18.    In May 2024, undercover HSI Special Agents attended a renewable energy EXPO in Houston, Texas. SOLAREVER USA, Inc., a California based vendor/distributor of solar panels was represented at the EXPO. Undercover agents spoke to Fernando Silva, regional manager for SOLAREVER, at the SOLAREVER booth. Silva spoke to the undercover agents about the availability and two-to-three-day delivery of solar panels stating that there were many solar

modules already present in the United States.

19.     On June 28, 2024, CBPOs at the World Trade Bridge, in Laredo, Texas, conducted a random inspection of an inbound shipment being imported under HTS code 7019.90.5140, described as "Glass fiber, including glass wool, rovings, other". Upon inspection of the trailer, CBPOs identified the merchandise as pallets of SOLAREVER solar panels and not the fiberglass goods listed on customs documents.

20.     CBPOs observed the importer of record for the shipment was Ecochillers, Inc. (Ecochillers). Open-source records researched by HSI Special Agents for Ecochillers indicated that the company manufactures commercial-grade air conditioning equipment including chillers and condensing units. There was no indication the company is involved in the solar panel industry. CBPOs conducted a data sweep for all customs entries made by Ecochillers and noted that on May 8, 2024, Ecochillers began importing shipments under HTS code 7019.90.5140, described as "Glass fiber, including glass wool, rovings, other". Ecochillers had no prior history of customs entries under that HTS code.

21.     A Homeland Security Investigations (HSI) Special Agent responded to the POE, photographed the shipment, and received a copy of the customs documentation on hand. The tractor and trailer were both marked with a company logo showing "BASI Transport Group".

22.     Customs and Border Protection Officers released the shipment of solar panels and HSI Special Agents followed the tractor from the Laredo Port of Entry to the BASI Logistics Group, Inc. (BASI) warehouse located at 11918 Conly Road, Laredo, Texas.

23.     In August 2024, and in furtherance of the investigation, undercover agents purchased one pallet of SOLAREVER solar panels from Fernando Silva. The bill of lading

provided by Silva was attached to the shipment upon delivery and listed the "Ship From" information as: Grupo BASI, 11918 Conley Road, Laredo, Texas.

24.     HSI SAs noted the cardboard container of the purchased pallet had areas on two sides that appeared to have been cut to remove the top layer of cardboard in two large spots. HSI SAs inspected the area and observed some printed ink marking still visible on the altered areas. They were able to observe that one of the removed markings read "Module". All previously documented SOLAREVER pallets seized by CBP and HSI were similarly marked on two sides with the words "Solar Module" in large type.

25.     On September 4, 2024, CBPOs and an HSI SA visited the BASI Logistics Group warehouse located at 11918 Conly Road and spoke to the manager, Juan Ballesteros (Ballesteros). CBPOs discussed the in-bond shipments with Ballesteros and asked about other in-bond shipments or shipments slated for export to Mexico. Ballesteros responded that he had shipments in the warehouse bound for export to Mexico. CBPOs were given permission to inspect the warehouse and were provided a tour of the warehouse area.

26.     During the tour, the HSI SA observed several dozen pallets matching the size and description of the pallet of solar panels purchased by the HSI UCA, as well as those seized previously at the POE by CBP. HSI SAs noted the cardboard containers on all the warehouse pallets appeared to have the same hastily removed 'Solar Module' markings as the pallet purchased by the HSI UCA.

27.     The HSI SA asked Ballesteros what merchandise was in the containers, and he responded, "construction materials" and then, "fiber glass panels". Ballesteros provided the HSI SA a copy of a customs document for one of the entries related to the solar

panels. The document listed 13 pallets with product description "Glass fiber, GLS WL, RVNG, OT" with a value of $17,006 (the approximate value of 13 pallets of solar panels would be around $37,000). The document listed the merchandise owner and consignee as 'Ecochillers, Inc'.

28.    The HSI SA informed Ballesteros that he recognized the containers and markings as belonging to solar panels he had seen, and Ballesteros gave the SA permission to open and inspect the contents of the container. The SA opened a pallet and observed it contained solar panels and not Glass fiber, GLS WL, RVNG, OT as indicated on the customs documents.

29.    The HSI SA conducted an inventory and counted 414 pallets of solar panels in the warehouse with a product description of "Glass fiber, GLS WL, RVNG, OT". By mispresenting the contents of the 414 pallets of solar panels, SOLAREVER avoided the imposition of duties on the solar panels.

30.    The 414 pallets of solar panels were detained for import violations including misclassification and undervaluation, among others. On the date of seizure, 411 pallets and three (3) individual solar panels were present in the warehouse and seized. The combined total of seized solar panels was12,744.[4]

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or

---

4. Included in the seizure were 404 pallets of 410-watt solar panels, 7 pallets of 550-watt solar panels, and three 160-watt solar panels.

Maritime Claims and Asset Forfeiture Actions.   The verified claims must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim.   The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

<u>PRAYER</u>

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Solar Panels in favor of the United States of America and for such costs and other relief to which the United States of America may be entitled.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

By:    /s/Mary Ellen Smyth
       Mary Ellen Smyth
       Assistant United States Attorney
       State Bar No.:  18779100
       Federal Bar No.:  31348
       11204 McPherson Road, Suite 100A
       Laredo, Texas 78045
       (956) 723-6523
       Email: Mary.Ellen.Smyth@usdoj.gov

11

<u>VERIFICATION</u>

I, Michael Riha, a special agent in Laredo, Texas, with the Department of Homeland Security - Homeland Security Investigations, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief based on information I obtained in the course of my investigation.

Michael Riha, Special Agent
Department of Homeland Security
Homeland Security Investigations